UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEMMA AYVAZIAN,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS A. COLLINS,<br><br>Defendant. | Civil Action No. 24-2804 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Jemma Ayvazian, a nurse working for the Department of Veterans Affairs, has brought this suit against its Secretary for violations of Title VII of the Civil Rights Act, alleging years of mistreatment by her colleagues and supervisors. The heart of her grievance is her September 2021 effective removal from her role as Director of Nursing Education at the VA, but she also extensively details a series of additional slights — ranging from subpar performance reviews to exclusions from conferences — that have accumulated over the past several years. After filing three separate (and thus far unsuccessful) complaints with the Equal Employment Opportunity Commission, Plaintiff has turned to the federal courts. Her suit alleges that she was unlawfully discriminated against on the basis of her race, sex, and national origin, retaliated against for protected activity, and subjected to a hostile work environment. Defendant now moves to dismiss the Complaint. See ECF No. 8 (MTD). Because Ayvazian's claims are either unexhausted or meritless — or both — the Court will grant the Motion.

I.      **Background**

The Court draws on the facts as pled in the Complaint, taking them to be true. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113–14 (D.C. Cir. 2000).

Ayvazian is a white female of Armenian descent who has been employed with the VA since 2008. See ECF No. 1 (Compl.), ¶¶ 3, 44, 52–54. She alleges that in 2020 she was "forced" to hire Chien Chen as a nurse in her department because he was friends with some of her colleagues and thereafter was told to "treat [him] differently than other employees because he was an Asian male." Id., ¶¶ 71–72. Refusing to do so, in August 2021 Plaintiff issued Chen several counseling letters related to his conduct and performance in his role, id., ¶¶ 75, 85, and also contacted her second-line supervisor to disclose "what she believed to be unlawful . . . [equal-employment-opportunity] practices" by her colleagues. Id., ¶¶ 11, 81; ECF No. 10 (Opp.) at 7. On September 20, 2021, she was effectively removed from her role as Director of Nursing Education and given a non-supervisory special-assistant position — a change in duties, but not in pay or grade. See Compl., ¶¶ 87–88, 96. The reasons given for the reassignment were, in her telling, "uncorroborated accusations regarding [her] supervisory behavior." Id., ¶ 97. Chen, meanwhile, was promoted to take over her duties in an acting capacity. Id., ¶¶ 90, 93, 159. He then proceeded to file an EEO complaint against Ayvazian in October 2021, alleging that she had discriminated against him on the basis of gender, sexual orientation, and race. Id., ¶¶ 109–10.

Not to be outdone, Plaintiff filed her first EEO complaint with the Department on November 11 of that year. Id., ¶ 11. She asserted principally that her role reassignment was an effort to discriminate against her, retaliate against her for contacting her supervisor with concerns, and subject her to a hostile work environment. Id., ¶ 13(a)–(x). On May 17, 2024, an

administrative judge with the EEOC granted summary judgment for the Department, and four days later, the Department adopted the AJ's decision and issued a Final Agency Decision dismissing Plaintiff's complaint. Id., ¶¶ 20–21. Ayvazian filed an appeal with the EEOC on June 19. Id., ¶ 22. On September 3, she withdrew that appeal. Id., ¶ 23 and p. 1. (These dates will matter later for exhaustion purposes.)

While her EEO case was progressing administratively (2021–2024), Plaintiff continued to face difficulties at work, which her prolix Complaint recounts at great length. These issues included unsatisfactory work scheduling, id., ¶¶ 99–102, performance ratings of "Fully Successful" instead of her previous evaluations as "Outstanding," id., ¶¶ 144, 230, 309, denial of opportunities through the noncompetitive selection of others for certain positions, id., ¶¶ 210–15, 253–56, 321–24, denial of overtime pay, id., ¶¶ 260–65, and more. See generally id., ¶¶ 56–324. These troubles prompted her to file two more EEO complaints with the Department: one on November 17, 2022, and the other on September 18, 2023. Id., ¶¶ 25, 36. The former — Plaintiff's second overall — focused on Ayvazian's unsatisfactory performance reviews as well as her exclusion from opportunities for advancement and from meetings and communications within the Department. Id., ¶ 27(a)–(l). The VA dismissed it on July 30, 2024. Id., ¶¶ 32–34. The third overall complaint focused similarly on unsatisfactory ratings Plaintiff had received and opportunities she had been denied, as well as workload and personnel changes she disagreed with. Id., ¶ 38(a)–(k). As of the time of the filing of this suit, no final decision had yet issued. Id., ¶ 43.

Ayvazian filed the present action on October 2, 2024, bringing three counts premised on the same set of facts. Count I asserts that she was discriminated against because of her race, national origin, and sex in violation of Title VII, 42 U.S.C. § 2000e et seq. Id., ¶¶ 325–334.

Count II alleges unlawful retaliation for EEO-protected activity, id., ¶¶ 335–344, and Count III adds a hostile-work-environment claim. Id., ¶¶ 345–354. She seeks compensatory damages and other equitable relief. Id. at pp. 45-51.

## II. Legal Standard

In seeking dismissal of Plaintiff's Complaint, Defendant argues that she neglected to exhaust many of her claims and fails to state a claim for the rest. See MTD at 1. Ordinarily, the failure to exhaust is an affirmative defense that the defendant must plead and prove, see Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); Opp. at 26, and it is thus "typically resolved at summary judgment." Clark v. Johnson, 206 F. Supp. 3d 645, 655 (D.D.C. 2016); e.g., Davila v. Mayorkas, 2023 WL 2072455, at *1–2 (D.D.C. Feb. 17, 2023). Plaintiff, however, pleads all the relevant facts herself, see Compl., ¶¶ 21–23; Opp. at 26–28, thereby "reveal[ing] the exhaustion defense on its face." Thompson v. DEA, 492 F.3d 428, 438 (D.C. Cir. 2007). The Court may consequently resolve the legal issues relating to exhaustion at this stage. See Morris v. McCarthy, 825 F.3d 658, 666 (D.C. Cir. 2016) (upholding dismissal for failure to exhaust). Because the exhaustion requirement is not jurisdictional, however, see Colbert v. Potter, 471 F.3d 158, 167 (D.C. Cir. 2006), it is properly evaluated (as are the merits questions) under Federal Rule of Civil Procedure 12(b)(6). See Porter v. Sebelius, 944 F. Supp. 2d 65, 68 (D.D.C. 2013); Noisette v. Geithner, 693 F. Supp. 2d 60, 65 (D.D.C. 2010); compare MTD at 1 (invoking both Rule 12(b)(1) and Rule 12(b)(6)).

Under that Rule, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow, 216 F.3d at 1113 (cleaned up). For a plaintiff to survive a Rule 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative

4

level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). That means a plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

### III. Analysis

The Court will first address whether Plaintiff properly exhausted her claims before analyzing her discrimination, retaliation, and hostile-work-environment causes of action in that order.

#### A. Exhaustion

Title VII prohibits discrimination in federal employment on the basis of race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-16(a). To get to federal court on such claims, however, complainants must first navigate a "labyrinthine . . . maze of administrative processes." Niskey v. Kelly, 859 F.3d 1, 5 (D.C. Cir. 2017); see 42 U.S.C. § 2000e-16(e). Those processes — and their attendant deadlines — collectively embody an administrative-exhaustion requirement that, if unmet, generally mandates dismissal of the action. Niskey, 859 F.3d at 7. The purpose of that requirement is to "give federal agencies an opportunity to handle matters internally whenever possible" and to ensure that federal courts "are burdened only when reasonably necessary." Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985).

As relevant here, regulations implementing Title VII dictate the timelines applicable to civil suits. In the main, 29 C.F.R. § 1614.407 requires a complainant to file a civil action within 90 days of obtaining final agency action on her complaint, id. § 1614.407(a), or, if she appeals,

within 90 days of a final decision from the Commission on appeal. Id. § 1614.407(c). If neither is forthcoming, she must wait 180 days after filing her complaint, id. § 1614.407(b), or her appeal, id. § 1614.407(d), before she can bring suit. If she withdraws her appeal, a complainant must still file a civil action "within 90 days of the receipt of the agency final action." Id. § 1614.407(e). In all events, if more than 90 days have passed since agency final action, a complainant who has filed an appeal with the Commission may file a civil action only in accordance with subsections (c) or (d) — i.e., within 90 days of a decision on appeal or at least 180 days after filing an appeal.

These deadlines spell doom for the actions described in Ayvazian's first EEO complaint, which center on the fracas over Chen's hiring and Plaintiff's subsequent reassignment from her Director position. See Compl., ¶ 13(a)–(x). Recall that she received a final agency decision dismissing that complaint on May 21, 2024. Id., ¶ 21. She appealed that decision to the EEOC on June 19 and then withdrew the appeal, id., ¶¶ 22–23, subjecting her squarely to the time limits outlined in § 1614.407(e). According to that regulation, she had 90 days from May 21 to file a civil action. But she waited to do so until October 2 — 134 days later. Because she withdrew her appeal, moreover, subsection (c) is inapplicable. The Court is also dubious that subsection (d) is applicable here, as that regulation's primary purpose is to give the Commission 180 days to respond to an appeal — an opportunity it did not have, given Plaintiff's withdrawal of her appeal. Instead, subsection (e)'s first sentence appears to govern, and, as just discussed, she failed to follow its timeline. Even if subsection (d) were to apply, however, it provides no refuge because Ayvazian filed her civil action fewer than 180 days from the date of filing her appeal on June 19. In short, on any reading, she did not exhaust. See MTD at 5–6.

6

Plaintiff's primary retort is that subsection (d)'s time limit — which requires waiting 180 days after filing an appeal with the Commission "if there has been no final decision by the Commission" — does not apply to her because she did receive a final decision from the Commission when the AJ recommended dismissing her case. See Opp. at 26–27. That is wrong twice over. The AJ's decision was not a "final decision by the Commission," but rather a recommendation that the Department could accept or reject within 40 days of receipt. See 29 C.F.R. § 1614.109(i). And the Department indeed accepted that recommendation a few days after receiving it, see Compl., ¶ 21, thus providing Plaintiff with the "final order" permitting her to appeal to the Commission. Id., § 1614.110(a). Subsection (d)'s reference to a "final decision by the Commission," moreover, plainly means a final decision on appeal — not a decision by an AJ at some point earlier in the process. Ayvazian therefore cannot escape the time limits in subsection (d) by claiming that she is somehow exempt from it entirely.

Perhaps sensing the weakness of that argument, Plaintiff instead posits that § 1614.407's timelines are mere "suggest[ions]." Opp. at 26. Nothing in the obligatory language of that provision supports that interpretation. On the contrary, our Circuit has long been clear that Title VII's exhaustion requirements are "mandatory." Douglas v. Donovan, 559 F.3d 549, 556 n.4 (D.C. Cir. 2009); see also Santos v. Lynch, 2016 WL 3951060, at *4 (D.D.C. July 20, 2016) ("[C]ourts . . . routinely dismiss[] as premature [Title VII] cases filed before the relevant waiting period has expired.") (collecting cases). They therefore must be enforced unless principles of waiver, estoppel, or equitable tolling dictate otherwise. See Colbert, 471 F.3d at 167.

Only the last of those is applicable here. The Court, however, is not inclined to exercise its equitable discretion to exempt Ayvazian from the exhaustion requirement. See Opp. at 29–

7

31. Many of her arguments to that effect amount to a request for special treatment; none provides a basis for departing from the usual rule that unexhausted claims are "not actionable." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (equitable exemptions to exhaustion are "to be applied sparingly"); see ECF No. 11 (Reply) at 3–5. Indeed, as Plaintiff herself makes clear, her reason for contravening the applicable timelines was simply convenience: she wished to "access the court with one complete and consolidated complaint." Opp. at 29; see id. at 30 (same). "As a general rule," however, "a Title VII plaintiff must timely exhaust administrative remedies for each discrete act alleged, even if the acts are related." Mount v. Johnson, 36 F. Supp. 3d 74, 83–84 (D.D.C. 2014) (cleaned up). And here, because the unexhausted claims relate to Ayvazian's first EEOC complaint, she cannot argue that they "grow out of" earlier, exhausted claims and need not be exhausted themselves. Weber v. Battista, 494 F.3d 179, 184 (D.C. Cir. 2007) (quotation marks omitted). The Court thus concludes that all claims relating to the actions in Plaintiff's first EEOC complaint — which include her role reassignment and replacement by Chen, see Compl., ¶ 13(a)–(x) — must be dismissed for failure to exhaust.

    B.    <u>Discrimination</u>

Even were exhaustion not an obstacle for that complaint, however, Ayvazian still does not show that <u>any</u> of the actions alleged in this suit — singly or in concert, and across all three EEOC proceedings — amounts to discrimination. The "two essential elements" of a Title VII discrimination claim are that "(i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin." Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). "To plead intentional discrimination, a plaintiff cannot merely invoke [her protected characteristics], but must allege some facts to show that [they were] the

reason for the defendant's action." Wilson v. DNC Servs. Corp., 315 F. Supp. 3d 392, 400 (D.D.C. 2018). That is not to say, however, that Plaintiff must at this stage plead a *prima facie* case of discrimination under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). Rather, the complaint must simply "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Although "detailed factual allegations" are not necessary at this stage, Twombly, 550 U.S. at 555, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.

For the purposes of Plaintiff's discrimination claim, the Court may assume without deciding that the assorted grievances recounted in her Complaint amount to "adverse employment action[s]." Baloch, 550 F.3d at 1196; see Compl., ¶¶ 330. 340, 350. Even granting her that, she still does not manage to plausibly allege that any of those actions occurred "because of" her race, sex, or nationality. Baloch, 550 F.3d at 1196. One scours the Complaint in vain for a single allegation linking her treatment to any protected characteristic. Instead, all Ayvazian provides is the following: "Defendant's management officials were motivated in its adverse employment actions against Plaintiff by virtue of animus towards Plaintiff caused by Plaintiff's protected classes." Compl., ¶ 331. Nothing else in the Complaint even references, much less supports, such a conclusory assertion. See Opp. at 33 (stating only that "Plaintiff identified her belief that she has been discriminated against"). That showing is not enough. See In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig., 928 F.3d 42, 54 (D.C. Cir. 2019) ("[W]e do not assume the truth of legal conclusions or accept inferences that are unsupported by the facts alleged in the complaint.").

9

Indeed, the gravamen of Plaintiff's Complaint — the hiring and promotion of Chen, to Ayvazian's detriment — she herself attributes to the fact that he was "friend[s]" with one of her colleagues. See Compl., ¶¶ 62, 71. She alleges no actual facts, moreover, that the decision to effectively replace her was motivated by animus toward her race, sex, or national origin; instead, she affirmatively alleges that her supervisors "produced . . . a one-page summary of uncorroborated accusations regarding [her] supervisory behavior," id., ¶ 97, and informed her that "her staff complained of 'mental health issues due to her leadership.'" Id., ¶ 13(m); see also id., ¶ 104 (noting that her rating period had been extended to permit additional "observation and assessment of [her] leadership and supervisory skills"). And while she further alleges that she was told that she "needed to treat Mr. Chen different[ly] than other employees because he was an Asian male," id., ¶ 72, she nowhere explains what that treatment entailed. More important, she never alleges facts connecting any preferential treatment of him to discrimination against her. Such "threadbare" allegations do not satisfy Plaintiff's "low burden" at this stage. L. Xia v. Tillerson, 865 F.3d 643, 659 (D.C. Cir. 2017).

In her Opposition, Plaintiff recasts these allegations as an attempt to make a comparator argument — i.e., that she was treated worse than a similarly situated person who does not share her protected characteristics. See Brown v. Sessoms, 774 F.3d 1016, 1023 (D.C. Cir. 2014); Opp. at 34. Even assuming that the Court could consider such allegations raised for the first time in an opposition, rather than in a complaint, but see Kingman Park Civic Ass'n v. Gray, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014), she still must "plead enough facts about [Chen] and the relevant context to allow a plausible inference that [she] was treated differently because of" her protected characteristics. Joyner v. Morrison & Foerster LLP, 2025 WL 1717402, at *3 (D.C. Cir. June 20, 2025). Where the pleadings do not allege any facts "to ground a reasonable

10

inference that [the plaintiff] was in fact similarly situated to" a comparator, however, Owens v. Thompson, 2024 WL 1328461, at *2 (D.D.C. Mar. 28, 2024), such claims must be dismissed.

Plaintiff herself gives the game away here. Contrary to her assertion that Chen "held the same position as [she] for a majority of the relevant time in this matter," Opp. at 34, her Complaint in fact states the opposite: Chen was initially hired as Ayvazian's subordinate, see Compl., ¶¶ 45, 57, 71, and subsequently took over her responsibilities once she was "removed from her position . . . and stripped of all supervisory duties." Id., ¶ 87; see id., ¶ 90. At all times, they reported to different supervisors. Id., ¶¶ 46, 89–90. Indeed, as mentioned, the thrust of Plaintiff's Complaint is precisely that Chen effectively replaced her — even if her colleagues and supervisors refused to acknowledge that fact, see Opp. at 9; Compl., ¶¶ 186–88 — not that he was treated better than she was while they held the same or similar roles. Although Ayvazian was not required at this stage to allege that her position was "nearly identical" to Chen's in all relevant aspects, Joyner, 2025 WL 1717402, at *3 (explaining that this standard applies at summary judgment or trial), here she actually alleges facts demonstrating the opposite.

As Defendant points out, moreover, much of the differing treatment that Ayvazian and Chen subsequently received appears, by Plaintiff's own terms, to stem from the fact that they were expected to perform different responsibilities after September 20, 2021. See Reply at 6–7. While Plaintiff alleges that she was denied "the opportunity to compete for" a position subsequently given to Chen, see Compl., ¶¶ 253–54, she nowhere states that she actually desired to compete for the position, that it was expected to be a competitive selection process, or that "the noncompetitive selection process was itself discriminatory." Garrett v. Lujan, 799 F. Supp. 198, 200 (D.D.C. 1992). In sum, these allegations do not permit a reasonable inference that

11

Chen was similarly situated to Ayvazian or that their differential treatment was attributable to her protected characteristics.

"To plead intentional discrimination, [a] plaintiff cannot merely invoke [her protected characteristics] in the course of a claim's narrative and automatically be entitled to pursue relief." Mesumbe v. Howard University, 706 F. Supp. 2d 86, 92 (D.D.C. 2010) (quotation marks omitted). Because Ayvazian has taken that route here, and because she has not otherwise plausibly alleged that she and Chen were "similarly situated in some meaningful respect," Joyner, 2025 WL 1717402, at *4 (quotation marks omitted), her discrimination claim must be dismissed.

### C. Retaliation

Plaintiff's retaliation count meets the same fate. Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); see id., §§ 2000e-16(d), 2000e-5(g)(2)(A) (making § 2000e-3(a) applicable to Government employers); Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (holding that § 2000e-3 applies equally to Government). To make out such a claim here, Ayvazian must allege that (1) she engaged in protected EEO activity, (2) she suffered a materially adverse action by Defendant, and (3) the two are causally connected. See Howard R.L. Cook & Tommy Shaw Found. *ex rel.* Black Emps. of Libr. of Cong., Inc. v. Billington, 737 F.3d 767, 772 (D.C. Cir. 2013).

Protected activity, as the statute suggests, consists of "participat[ing] in any manner" in an EEO proceeding or "oppos[ing] any practice" Title VII forbids. See 42 U.S.C. § 2000e-3(a).

In the retaliation context, materially adverse actions are those that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotation marks omitted). They thus must cause Plaintiff "material adversity, not trivial harms." Wiley v. Glassman, 511 F.3d 151, 161 (D.C. Cir. 2007) (quotation marks omitted). To establish causation, moreover, Ayvazian must show that Defendant's desire to retaliate against her for her protected activity was the but-for cause of the adverse employment actions she complains of. See Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013). She may rely entirely on temporal proximity to do so — as she appears to do here, see Opp. at 37 — "but only where the two events are very close in time." Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quotation marks omitted).

Ayvazian's Complaint alleges several discrete instances in which she engaged in protected activity: her initiation of the three different EEO complaints as well as her August 2021 disclosure to her second-line supervisor that she felt her colleagues were engaged in "unlawful . . . EEO practices." Compl., ¶¶ 10–11, 24–25, 35–36, 81, 338. Once again putting exhaustion to one side — which separately provides a reason to dismiss the first retaliation claim regarding her removal discussed below — the Court will examine each in turn.

Plaintiff alleges that she contacted her second-line supervisor Paul Greenberg on August 10, 2021, to report discriminatory actions by her colleagues, and that her effective removal from her position one month later constitutes unlawful retaliation for that conversation. Id., ¶¶ 13, 81, 338; Opp. at 37–38. A significant reduction in job responsibilities, as Plaintiff alleges here, can qualify as an adverse employment action. See Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006). As Defendant notes, however, it was Plaintiff's first-line supervisor Erin Patel, not Greenberg, who was responsible for the change in her duties, see Compl., ¶ 13(a), and Ayvazian

13

has not alleged that Patel knew of the August conversation with Greenberg. See MTD at 10. That oversight is fatal.

It is well established that a supervisor "could not have retaliated against" a plaintiff "unless [he] had knowledge of [the] protected activity." Jones v. Bernanke, 557 F.3d 670, 679 (D.C. Cir. 2009); see Talavera v. Shah, 638 F.3d 303, 313 (D.C. Cir. 2011). Here, that means that Plaintiff must allege facts permitting a reasonable inference that Patel knew of the conversation before removing Ayvazian from her position. Jones, 557 F.3d at 679. She has not done so. Nor has she alleged that the August conversation permits a reasonable inference that Defendant, as an entity, had knowledge of her protected activity, which could be imputed to her supervisor. Cf. id. (retaliatory motive can be inferred where "the employer had knowledge of the employee's protected activity, and the adverse personnel action took place shortly after that activity") (quoting Holcomb, 433 F.3d at 903). The Court therefore cannot conclude that Ayvazian has adequately pled causation. Plaintiff, moreover, does not even address this argument in her papers, see Opp. at 37–38, so the Court may also treat it as conceded. See Savoy-Kelly v. E. High Sch., 2006 WL 1000346, at *4 (D.D.C. Apr. 14, 2006) (citing FDIC v. Bender, 127 F.3d 58, 67–68 (D.C. Cir. 1997)).

Next, Ayvazian contacted an EEO counselor on September 20, 2021 — the day she was removed from her position — and then filed a formal complaint on November 11 of that year. See Compl., ¶¶ 10–11, 87. Yet Plaintiff does not argue that her effective removal constituted retaliation for filing this first complaint, see Opp. at 37–39, and, given the timing, the Court does not see how she could. Her first contact with a counselor happened on the very same day she was reassigned, and she did not file the complaint until almost two months later. It is "hard to argue" that she was removed from her position because of these actions if her supervisor was

14

"completely unaware of" her protected activity at the time the removal decision was made. Dudley v. Washington Metro. Area Transit Auth., 924 F. Supp. 2d 141, 182 (D.D.C. 2013).

Plaintiff then contacted an EEO counselor for the second time on October 11, 2022, followed by a formal complaint on November 17 of the same year. See Compl., ¶¶ 24–25. She argues in her Opposition that at least two retaliatory adverse employment actions followed: she received a "lower than deserved performance appraisal" on November 19, and in December she was forced to issue performance objectives for Chen with which she disagreed (and despite being stripped of her supervisory duties), thus "undermining her supervisory autonomy." Opp. at 38; see Compl., ¶¶ 230, 237–45. Although Ayvazian does not raise the issue in her Opposition, it also appears that, on January 4, 2023, Patel issued her a "Written Counseling for Conduct" because she had "engaged in 'inappropriate conduct' and 'lack of professionalism.'" Id., ¶ 247.

The Court is hard pressed to conclude that an action purportedly "undermining her supervisory autonomy" — merely by requiring Plaintiff to rubberstamp another colleague's performance objectives — rises to the level of "material adversity." Glassman, 511 F.3d at 161 (emphasis omitted). Letters of counseling and disappointing performance reviews, moreover, constitute adverse actions in the retaliation context only when they contain "abusive language," affect an employee's salary or other benefits, or result in other "adverse employment consequences." Spence v. United States Dep't of Veterans Affs., 109 F.4th 531, 540 (D.C. Cir. 2024) (quotation marks omitted). Ayvazian does not allege that either the written counseling or the performance review affected any aspect of her pay, work, or benefits, nor does she contend that they contained anything other than "job-related constructive criticism." Id. (quotation marks omitted). What is more, the counseling letter appears to stem from Ayvazian's insistence on confronting a colleague for having treated Chen as the official Director of Nursing Education,

15

even though, in Plaintiff's telling, he had assumed that role only in an "acting" capacity. See Compl., ¶¶ 248–49.  Even were that letter an adverse action, then, Ayvazian's own allegations provide a ready, non-retaliatory explanation for it.

Finally, Plaintiff contacted an EEO counselor for the third time on August 8, 2023, and filed her last formal complaint on September 18.  Id., ¶¶ 35–36.  In her Opposition, her only argument concerning retaliation for this protected activity is to resurrect her allegation that Patel "non-competitively selected Mr. Chen" for a position for which Plaintiff believes she was "better qualified" — in June of 2023.  See Opp. at 38.  The Court is at a loss to see how a noncompetitive selection that precedes her protected activity could somehow be retaliation for that activity.  Outside of this inexplicable argument, Ayvazian's Complaint lists other potentially adverse actions that shortly followed the initiation of this last complaint, such as another disappointing performance review and the decision to allow Chen to attend conferences on the department's dime, which Plaintiff feels she ought to have attended.  See Compl., ¶¶ 309–19.  As previously discussed, however, a performance review on its own does not constitute adverse action, absent any indication that it affected the employee's pay or caused other negative consequences.  See Spence, 109 F.4th at 540.  Plaintiff also does not allege that the denial of the opportunity to go to a conference resulted in any material adversity.  As she herself acknowledges, moreover, Chen attended those conferences *qua* Acting Director of Nursing Education, a role she functionally no longer held.  See Opp. at 18–19.  There is thus little to support the argument that the denial of these opportunities constituted adverse employment actions or that they were causally linked to her protected EEO activity.

In sum, despite engaging repeatedly in protected EEO activity across several years, Ayvazian has not plausibly alleged that Defendant retaliated against her for that activity. The Court will therefore dismiss Count II for failure to state a claim.

D.    Hostile Work Environment

Finally, Plaintiff's hostile-work-environment count must follow the others out the door. To make out such a claim, she must plausibly plead that, because of her protected status, she was "exposed to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Joyner, 2025 WL 1717402, at *7 (quotation marks omitted); see Davis v. Coastal Int'l Sec., Inc., 275 F.3d 1119, 1123–24 (D.C. Cir. 2002). Her allegations, moreover, "must also be adequately linked such that they form a coherent hostile environment claim." Joyner, 2025 WL 1717402, at *7 (quotation marks omitted). "For example, they might involve the same type of employment actions, occur relatively frequently, and be perpetrated by the same managers." Baird v. Gotbaum, 792 F.3d 166, 169 (D.C. Cir. 2015) (cleaned up). Courts assessing such claims must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Defendant suggests that Plaintiff also may not rely solely on the same allegations undergirding her discrimination and retaliation claims to support her hostile-environment count, as Ayvazian clearly has done here. See MTD at 13. Even if she could, however, Count III suffers from the same defect as her discrimination claim: she has not plausibly alleged that any abusive environment that exists is attributable to her protected characteristics. As previously

17

discussed, her Complaint is practically devoid of any facts linking her work environment to her race, sex, or nationality, and Plaintiff herself does not even press that case in her Opposition. See Opp. at 40; Reply at 10–11. Instead, all she alleges is the same formulaic sentence recited verbatim in her discrimination count. See Compl., ¶ 351 ("Defendant's management officials were motivated in its adverse employment actions against Plaintiff by virtue of animus towards Plaintiff caused by Plaintiff's protected classes."). Such conclusory assertions are not enough. See In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig., 928 F.3d at 54.

## IV.   Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: June 30, 2025